UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION

| | | |
|---|---|---|
| ROBERT MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7: 05-149-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| JO ANNE BARNHART, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

**        **        **        **        **

This matter is before the Court for consideration of cross-motions for summary judgment filed by Plaintiff Robert Moore (Moore) and Defendant Jo Anne Barnhart, Commissioner of Social Security (the Commissioner). [Record Nos. 4 and 5] Through this action, Moore seeks to reverse the decision of an administrative law judge (ALJ) concluding that he was not entitled to a period of disability or disability insurance benefits. However, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Moore.

I.        **BACKGROUND**

Moore filed an application for a Period of Disability and Disability Insurance Benefits (DIB) on January 31, 2003. The claim was denied initially and upon reconsideration. Thereafter, Moore requested a hearing before an ALJ. On January 13, 2004, an administrative hearing was conducted before ALJ Andrew J. Chwalibog. During the hearing, the ALJ heard

testimony from Moore and Leah Salyers, a vocational expert (VE).  A supplemental hearing was held on April 28, 2004.  Donald Woolwine, a VE, testified at the supplemental hearing. Thereafter, the ALJ issued a decision denying benefits to Moore.  The ALJ concluded that Moore's impairments did not prevent him from performing his past relevant work.  Specifically, the ALJ found that the "claimant's past relevant work . . . did not require the performance of work-related activities precluded by his residual functional capacity."  [Tr., p. 18] Moore's request for review was denied by the Appeals Council on April 1, 2005.  [Tr., pp. 5-7]

At the time of the hearing, Moore was a 49-year-old individual with a high school education and four years of college.  He has past work experience as a social worker, stocker and truck driver.   [Tr., p. 13] Moore alleges disability due primarily to bipolar disorder, anxiety, paranoia, concentration problems and psychotic episodes.  After a careful review and evaluation of the medical evidence of record and testimony at the hearing from the Claimant and the VEs, the ALJ found that Moore had a "fair (defined as limited but satisfactory) ability to use judgment, behave in an emotionally stable manner, relate predictably in social situations and demonstrate reliability." [Tr., p. 18]  He also determined that Moore had "poor (defined as seriously limited but not precluded) ability to deal with work stresses." [Tr., p. 18] Despite these limitations, the ALJ concluded that Moore was able to perform his past relevant work as a stock worker and truck driver.  Although the ALJ found that Moore had a severe impairment due to alcohol dependence, he further concluded that, absent the alcohol dependence, he had no medically determinable impairment due to anxiety or depression. [Tr., p. 14] Based on these findings, the ALJ found that Moore was not disabled. [Tr. 12-18]

-2-

## II.      LEGAL STANDARD

A claimant's social security disability determination is made by an ALJ in accordance with a five-step analysis. If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. First, a claimant must demonstrate that he is not currently engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, a claimant must show that he suffers from a severe impairment. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months, which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the Claimant's residual function capacity ("RFC") and relevant past work to determine if he can do past work. If he can, he is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of this analysis, if the claimant's impairment prevents him from doing past work, the Commissioner will consider his RFC, age, education and past work experience to determine if he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002), (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for social security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Wyatt v. Sec'y of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lashley v. Sec'y of Health and Human Services*, 708 F.2d 1048, 1053 (6th Cir. 1983). While significant deference is accorded to the ALJ, the standard employed in these cases does not permit a selective reading of the record. Instead, "substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must be taken into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Garcia v. Sec'y of Health and Human Services*, 46 F.3d 552, 555 (6th Cir. 1995); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Casey v. Sec'y of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Smith v. Sec'y of Health and*

*Human Services*, 893 F.2d 106, 108 (6th Cir. 1989).  Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g).

In determining whether the ALJ's opinion is supported by substantial evidence, courts may not "try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).  It is the job of the ALJ to make credibility findings after listening to testimony, observing the claimant's demeanor, and evaluating the testimony in light of the written evidence.  Credibility determinations are particularly within the province of the ALJ.  *Gooch v. Sec'y of Health and Human Services*, 833 F.2d 589 (6th Cir. 1987); *Villarreal v. Sec'y of Health and Human Services*, 818 F.2d 461, 464 (6th Cir. 1987).

## III.   DISCUSSION

Moore asserts that the ALJ erred in finding that he would not be disabled independent of his alleged alcohol dependence.  Specifically, Moore asserts that the "vast physical and psychiatric medical treatments [records] discuss [his] depression, anxiety and bi-polar disorder" whereas the "only notations to discuss alcohol abuse are sparse."  [Record No. 4]  In addition, Moore asserts that the ALJ failed to considered whether his alleged depression, anxiety and bipolar disorder constitute severe impairments in light of his discontinued alcohol abuse.

Initially, it should be noted that, effective March 29, 1996, Congress changed the definition of disability to prohibit a finding of disability if drug addiction or alcoholism is "a contributing factor material to" the determination of disability. 42 U.S.C. § 423(d)(2)(C). Under the regulations, the key factor the Commissioner must examine in determining whether drugs

-5-

or alcohol is a contributing factor to the claim is whether the Commissioner would still find the claimant disabled if the claimant stopped using drugs or alcohol. *See* 20 C.F.R. § 404.1535(b)(1).

In the present case, the ALJ did not rely on this type of analysis in determining whether the Claimant was entitled to disability insurance benefits. Instead, the ALJ concluded that Moore was not disabled after reviewing all of his mental and physical impairments, including his depression and anxiety. Thus, the alcohol materiality inquiry was irrelevant in this case.

In essence, Moore asserts that he suffers from an anxiety condition separate and apart from his abuse of alcohol. Moore contends that the ALJ erred by failing to consider his mental impairments. However, the ALJ's decision reflects that he did consider Moore's alleged mental impairments, including anxiety, depression and bipolar disorder, but determined that these conditions were secondary to his alcohol abuse. Specifically, the ALJ noted that

> The claimant alleges impairment due to depression and anxiety. I am persuaded by the opinion of Dr. Gitlow that the claimant's mood related symptoms appear secondary to alcohol use. Dr. Gitlow assessed that, absent alcohol dependence, the claimant had no less than good ability abilities (sic) to function mentally. The record shows the claimant has been prescribed psychotropic medications. However, he admitted at the hearing that he takes no medication and noncompliance to medication therapy is indicated throughout the medical record. The claimant reported psychotic symptoms were observed at the hospital and he was treated with Librium for detoxification. Even with a blood alcohol level of 172.6 upon admission the claimant's attention and concentration was assessed as fair as well as his insight and judgment. The claimant reports a history of bipolar disorder and bipolar disorder has been diagnosed. However, the mental health facility appeared to have no knowledge of the claimant's alcohol dependence. I find that, absent alcohol dependence, the claimant has no medically determinable impairment due to anxiety or depression.

[Tr., p. 14]

-6-

The evidence of record supports this finding by the ALJ.  According to the medical records, Moore was hospitalized at Appalachian Regional Healthcare, Inc. from February 7, 2003 to February 14, 2003, due to suicidal ideation.  His treatment records indicate that, prior to the hospitalization, he had a longstanding history treatment for alcohol dependence and bipolar disorder and that he had been noncompliant with medications.  During his hospitalization, he was given multiple medications, including Librium detox.  As a result, Moore's depressive and manic symptoms significantly improved.  The records further indicate that, while in the hospital, Moore did not have any psychotic symptoms.  Further, when discharged, he had no problems with concentration or attention, his cognition and sensorium were intact, his impulse control was fair, and his insight and judgment were good.

Moore's medical records further reflect that he was treated at Pathways, Inc. from April 4, 2003 to August 28, 2003.  Initially, he reported that he had a history of alcohol dependence and that he typically drank a six pack a day.  On July 3, 2003, he reported that his mood swings were down and that he had some decrease in anxiety.  [Tr., p. 246] On August 28, 2003, the staff notes indicate some improvement with his condition.  Specifically, the notes reflect that Moore's mood was stable and that he reported only mild mood swings.  [Tr., p. 246]  In the termination summary, Valeria Ryan, an employee, noted that Moore had become more stable over the four months that he received treatment at the center and that he had progressed satisfactorily.  [Tr., p. 247]  However, she further stated that Moore probably continued to drink more than he reported.

Dr. Wayne Edwards performed a consultative examination of Moore on April 16, 2003. At that time, Dr. Edwards diagnosed Moore with nicotine dependency and dysthymia. He ruled out bipolar disorder but indicated that Moor had anti-social personality traits. After performing a mental status examination, Dr. Edwards noted the following: that Moore was pleasant and cooperative; that his mood was down and his affect was flat, but appropriate; that he was able to engage in conversation without difficulty; that he was alert and demonstrated no distractibility; and that his recent remote memory was intact. [Tr., p. 195] In assessing Moore's functional ability, Dr. Edwards stated that:

> [Moore] appears to be able to perform simple work-related task (sic). He was able to ask simple questions and ask for assistance. He had to follow one- and two-step commands. The patient's concentration and persistence were congruent with the patient's level of supervision. He appeared to be able to work without special supervision. He identified normal hazards and took the appropriate precautions. He demonstrate an ability to adapt to changes in the day to day work setting without significant impairment.

[Tr., p. 197] Based on these observations, Dr. Edwards concluded that Moore was capable of working an eight hour day, five days a week "without psychiatric symptoms." [Tr., p. 197]

On February 4, 2004, the ALJ submitted interrogatories to Dr. Stuart Gitlow. Dr. Gitlow responded that, in his opinion, Moore suffered from alcohol and nicotine dependence. However, he further opined that Moore did not have any impairment or combination of impairments which met or equaled a listed impairment. Dr. Gitlow stated that the Claimant's alcohol dependence appeared to be episodic in nature. Dr. Gitlow opined that the psychotic symptoms could be the result of Moore's intermittent use of alcohol. Dr. Gitlow noted that there was no clear documented period in which Moore was sober from alcohol, and that the medical evidence

-8-

substantiated the likelihood that he was using alcohol in at least some quantity, albeit episodically, throughout the dates in question. Although Moore contends that his mental problems are not related to his alcoholism, Dr. Gitlow's opinion directly contradicts this fact. After reviewing the evidence of record, the ALJ specifically stated that he was persuaded by Dr. Gitlow's opinion that "[s]ince the [Moore's] mood related symptoms also appear[ed] to present themselves episodically, it is likely that the mood-related symptoms [were] appearing secondary to [his] alcohol use." [Tr., p. 268].

Having independently reviewed the record, it is apparent that there is substantial evidence to support the ALJ's determination that Moore does not have any mental (or physical) limitations that would prevent him from past relevant work as a stock worker and/or truck driver.

## IV.    CONCLUSION

Based on the analysis set forth above, the Court concludes that the ALJ's opinion was supported by substantial evidence. Accordingly, it is hereby

**ORDERED** as follows:

(1)    Claimant's Motion for Summary Judgment [Record No. 4] is **DENIED**;

(2)    The Commissioner's Motion for Summary Judgment [Record No. 5] is **GRANTED**; and

(3)    The administrative decision will be **AFFIRMED** by separate judgment entered this date.

This 27th day of December, 2005.



Signed By:

*__Danny C. Reeves__* $\mathcal{DCR}$

**United States District Judge**